[979 NYS2d 69]

Penguin Group (USA) Inc., Appellant, v Time/Warner Retail Sales & Marketing Services, Inc., Respondent.

First Department, January 28, 2014

### APPEARANCES OF COUNSEL

*Dorsey & Whitney LLP*, New York City (*Jonathan M. Herman* and *Joshua Colangelo-Bryan* of counsel), for appellant.

*Cravath, Swaine & Moore LLP*, New York City (*Rowan D. Wilson* and *Heather L. Cannady* of counsel), for respondent.

### OPINION OF THE COURT

ANDRIAS, J.

By agreement made as of January 1, 1997, which was amended and extended several times, plaintiff granted defendant "the exclusive right to distribute to independent distributor wholesalers" certain categories of books published by plaintiff. As part of its duties, defendant booked orders and collected payments from the wholesalers, which had the right to return unsold books to plaintiff for full credit. Defendant received commissions for its services, made payments to plaintiff based on the total price of the books shipped, less returns, and agreed to bear any losses for uncollectible accounts.

The agreement terminated effective December 31, 2010. At issue is whether the amount due plaintiff, as of the termination date, for books distributed by defendant to nonparty wholesaler Anderson News should be computed using actual returns pursuant to paragraph 13 (d) of the agreement or a historical return rate pursuant to paragraph 16. The parties have resolved all outstanding balances pertaining to the agreement except for this issue and have agreed that the amount relating to the dispute is $2,353,478.89 (as discussed below).

The motion court found that paragraph 16 unambiguously allowed defendant to compute the "Net Sales" to Anderson using a historical return rate because Anderson was placed in involuntary bankruptcy in March 2009 and ceased processing returns from its retailers, even though Anderson returned all of the unsold books in its warehouses. Accordingly, in the order appealed from, the court granted defendant's motion for summary judgment dismissing the complaint and denied plaintiff's cross

motion for partial summary judgment on its breach of contract claim (2012 NY Slip Op 33543[U] [2012]). We now reverse and hold that paragraph 13 (d) governs and that defendant is only entitled to a credit based on the actual returns and that plaintiff is entitled to recover the sum of $2,353,478.89 on its breach of contract claim.

On February 7, 2009, Anderson issued a press release announcing that it had "suspended normal business activities effective immediately." On February 19, 2009, Anderson issued a memo to its retailers stating that News Group Distribution Services, Inc. (the News Group) had acquired certain of its assets and that for certain areas would return books "currently in warehouses" and "process book product in transit or returned by a[n] Anderson News retailer." On February 25, 2009, the News Group advised retailers that the deadline for returns was February 28, 2009, and that thereafter it would have "no further responsibility to process routine customer or warehouse inventory returns on behalf of [Anderson]."

In March 2009, Anderson was placed in involuntary bankruptcy. From April to July 2009, defendant deducted a total of $4,970,104.69 from its monthly payments to plaintiff based on the historical average rate at which plaintiff's books had been returned as unsold. In December 2009, plaintiff advised defendant that it had recovered books from Anderson's warehouses valued at $2,616,625.80 and issued defendant a credit in that amount. Plaintiff then commenced this action seeking to recover the sum of $2,353,478.89, representing the difference between the $4,970,104.69 defendant deducted based on the historical return rate and the $2,616,625.80 credit plaintiff issued based on actual returns.

"When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations" (*131 Heartland Blvd. Corp. v C.J. Jon Corp.*, 82 AD3d 1188, 1189 [2d Dept 2011]). " 'Form should not prevail over substance and a sensible meaning of words should be sought' " (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 13 NY3d 398, 404 [2009]).

Paragraph 13 (d) of the agreement, as amended, provides that

"[n]otwithstanding the provisions of subparagraph

12 (a), with respect to shipments of Books for which a payment has not been made as of the last day of the term hereof, whether the term ends by expiration or earlier termination (the 'unsettled Books'), Warner shall pay Publisher a sum one hundred five (105) days after the end of the term (the 'Finalization Payment'), which shall be equal to the shipments less actual returns of any unpaid Books less any Deductible Charges as defined in Paragraph 13 (a)."[1]

By its express terms, paragraph 13 (d) governs the "Finalization Payment" due plaintiff upon the agreement's termination and establishes defendant's obligation to make a payment equal to the shipments less actual returns. Paragraph 16, entitled "Wholesaler Bankruptcy—Computation of Net Sales," does not require otherwise under the circumstances before us.

Paragraph 16 provides:

"In the event that any Wholesaler voluntarily or involuntarily takes advantage of any federal or state insolvency law for relief of debtors, including reorganization, or shall cease its business operation with the effect that such Wholesaler fails to return its unsold copies of the Books, Warner shall be entitled to compute Net Sales applicable to the uncollected amount on a per-title basis for all unsettled titles for the period of such failure on the basis of the average Net Sales of Books reported by such Wholesaler for the twelve (12) months (or such lesser period if applicable) prior to the period of such failure. Warner shall use all reasonable efforts to prevent the copies of Books in such Wholesaler's inventory from re-entering the market in returnable condition, including the purchase by Warner of such inventory copies if same are generally offered for sale or auction and are available to Warner for purchase."[2]

---

1. Paragraph 13 (a), among other things, allows defendant to deduct from payments to plaintiff "actual returns" and "any overpayments and all other proper charges, payments or other reimbursements due Warner pursuant to the terms of this Agreement or otherwise authorized by Publisher hereunder."

2. The agreement defines "Net Sales" as "the number of copies of the Book shipped by Publisher pursuant to Warner's instructions, minus all copies returned pursuant hereto" and "Net Billings" as "the Wholesale Price of the Book multiplied by Net Sales, minus 'Warner's Commission' as set forth in paragraph 10 below."

In holding that paragraph 16 governs the amount due with respect to books sold to Anderson, the motion court rejected plaintiff's argument that the phrase "with the effect that such Wholesaler fails to return its unsold copies of the Books" applies to both bankruptcy and the cessation of business operations. The court reasoned that if the phrase applied to both, "then there would be a comma after the word 'operation' in ¶ 16." Thus, the court found that "the period in which a wholesaler is in bankruptcy is itself a 'failure'," even if the wholesaler returns all copies of the books. However, "[i]t is a cardinal principle of contract interpretation that mistakes in grammar, spelling or punctuation should not be permitted to alter, contravene or vitiate manifest intention of the parties as gathered from the language employed" (*Banco Espírito Santo, S.A. v Concession Do Rodoanel Oeste S.A.*, 100 AD3d 100, 109 [1st Dept 2012]). There is no dispute that the purpose of paragraph 16 was to account for circumstances under which the normal processing of returns would likely be interrupted, so that the actual rate of returns would be an unreliable indicator of actual copies sold. "[I]t is untenable that the parties would have intentionally left the meaning of their agreement to such vagaries as placement and punctuation" (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 68 [1st Dept 2008], *affd* 13 NY3d 398 [2009], *supra*). Paragraph 16 addresses a wholesaler's failure to return unsold books during the period of the failure; Anderson returned more than $2.6 million worth of books in its possession after it ceased operations and was placed into involuntary bankruptcy.

Defendant asserts that Anderson has not processed returns from its retailers, but provides no proof of its assertion. Indeed, according to the affidavit of an Anderson vice-president, after the commencement of the bankruptcy proceeding, "Anderson News began making arrangements to return to all book publishers books that Anderson News still held in stock, including books that had been returned for credit to Anderson News by its retail customers."

In holding that paragraph 16 governs, the motion court also found that the defined term "Net Sales" has "always been included [in] and never [been] removed" from paragraph 13 (d). In so ruling, the court ignored the plain language of the agreement. Paragraph 13 (d) makes no reference to "Net Sales" and refers only to actual returns.

The motion court also opined that a calculation based on actual returns would result in an overpayment to plaintiff.

However, defendant cannot suffer any adverse financial consequence in connection with the unsold books unless they are actually returned and it issues a credit for those returns without receiving a corresponding credit from plaintiff. Significantly, defendant is not offering to distribute to retailers the nearly $2.4 million it has withheld based on the historical return rate. Moreover, defendant, which agreed to bear any losses for uncollectible accounts, has filed a proof of claim in the Anderson bankruptcy seeking $81,138,884 for magazines and books shipped to Anderson, including $6,447,918.67 owed for plaintiff's books.

Accordingly, the order of the, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered August 28, 2012, which denied plaintiff's motion for summary judgment on its breach of contract claim and granted defendant's cross motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, defendant's cross motion denied, and plaintiff granted partial summary judgment on its breach of contract claim in the amount of $2,353,478.89. The Clerk is directed to enter judgment accordingly.

MOSKOWITZ, FREEDMAN, MANZANET-DANIELS and FEINMAN, JJ., concur.

Order, Supreme Court, New York County, entered August 28, 2012, reversed, on the law, without costs, defendant's cross motion denied, and plaintiff granted partial summary judgment on its breach of contract claim. The Clerk is directed to enter judgment accordingly.